OPINION OF THE COURT
Nat H. Hentel, J.
In this CPLR article 78 proceeding, petitioner seeks to (a) review and then declare the acts of respondents as being arbitrarily and capriciously violative of his rights to due process of law; (b) grant permission to proceed as a poor person pursuant to CPLR 1101; (c) set aside respondents’ denial of his release on parole; and (d) have respondents provide him with an immediate new parole hearing which will conform in all respects with the requirements of law. It is therefore incumbent upon this court to review the regularity of the proceedings herein.
findings of fact
Petitioner was convicted of manslaughter in the first degree and sentenced on September 23, 1977 to an indeter *72 mínate period of imprisonment of a minimum of 3 and a maximum of 10 years. Prior to being sentenced, he had never been convicted of a crime. The instant crime had been characterized by respondents in their parole summary as “reportedly a family dispute, revenge type offense .” Petitioner became eligible for parole on November 16,1979, and before that date, he attended a parole hearing on October 23, 1979. In a remarkably brief hearing — [the record only consists of 4y2 double spaced typewritten pages] — petitioner’s conduct and activities during his imprisonment were the subject of a cursory inquiry by the Parole Board. At the hearing’s conclusion, the Parole Board denied petitioner’s early release and stated in its written decision:
“You [petitioner] are convicted of a very serious crime, manslaughter 1st degree, during which you shot and killed your victim with a sawed-off rifle. There is no reason to believe that the deceased was armed or placing your life in jeopardy at the time of the shooting. Accordingly, your release at this time would be incompatible with the welfare of society.” (Emphasis supplied.)
Thereafter, upon petitioner’s appeal, he received an administrative review of this decision by an appellate panel of the Parole Board. On March 19,1980, the board affirmed its initial determination without further written opinion or clarification. It should be noted that petitioner was never informed of the names of the appeal board members, although he knew the names of the three hearing commissioners who initially conducted the hearing.
CONCLUSIONS OF LAW
Section 259-i (subd 1, par [a]; subd 2, par [c]) of the Executive Law requires that the board must take all of the following factors into consideration in determining early release on parole. (1) the inmate’s institutional record, (2) his academic achievements, (3) his training or work assignments, (4) his performance, if any, in a release program, (5) any release plans involving community resources, education and training support services, (6) the seriousness of the offense, (7) the type of sentence, (8) the District Attorney’s recommendations, (9) the presentence pro *73 bation report, (10) mitigating and aggravating factors of the crime, and (11) his prior criminal record. Section 259-i (subd 2, par [a]) of the Executive Law further provides that in the event of denial of parole, the inmate shall be notified in writing of the “factors and reasons for such denial of parole. Such reasons shall be given in detail and not in conclusory terms.” (Emphasis supplied.) It should be noted that the above-quoted section of the Executive Law establish the procedures for the conduct of the work of the State Board of Parole.
After reviewing the brief hearing record, this court concludes that respondent apparently did not follow the legislative mandates quoted above, and probably did not consider all of the required factors, nor did it publish written detailed reasons for its denial of parole.
During the initial hearing on October 23,1979, the board questioned petitioner on the record as follows:
“Q How come the court gave you a minimum?
“A I can’t tell you that.
“Q Probably the crime was so serious that they felt they should give you a court-imposed minimum.” (Emphasis supplied.)
The board’s comment is certainly speculative in nature and reveals that the sentencing minutes were not reviewed or were not before the board since the Sentencing Judge’s reasons for fixing a minimum term of imprisonment are required to be set forth in the sentencing minutes. Thus, the board’s denial of parole based primarily on only one factor —the seriousness of the crime — is apparently based only on a probability and is thus conclusory in nature without a review of the supportive facts to be found in the Sentencing Judge’s minutes.
The court notes that manslaughter in the first degree is a class B felony requiring an indeterminate term of imprisonment under the provisions of section 70.00 of the Penal Law. Under the statutory sentencing requirements, if the court sets a minimum sentence, the court “shall set forth in the record the reasons for its action”. (Penal Law, § 70.00, subd 3, par [b].) At this point; the court feels com *74 pelled to ask: If a Judge or a jury as triers of the facts in any case are required not to speculate on facts not in the record in reaching a conclusion, then should not an administrative body such as the Parole Board be held to any lesser adherence to this wise rule of law?
Further, the board’s decision concludes without setting forth any justification for such conclusion that the deceased victim of petitioner’s act was not armed. The parole hearing record contains testimony that petitioner believed the victim to be armed. If the board chose not to believe the statements of petitioner at the hearing, then it should have detailed its reasons for discrediting his opposing statement in its decision.
The record also reveals that petitioner had taken college courses and bilingual instruction in jail, had scored no “bad time,” and had also been assigned a clerk’s position in jail. The board’s decision does not reflect that it took these factors into consideration as required by the pertinent statutes.
Petitioner’s brief in support of this proceeding states, “The purpose of requiring the respondents to state their reasons in making parole decisions is to enable intelligent review.” (Citing United States ex rel. Johnson v Chairman of New York State Bd. of Parole, 500 F2d 925.) This court agrees with this statement. The written reasons by the board for denial of parole in this instance offer very little of cogent or probative value for this court to review. After all, the only factor respondents mention in their decision is the seriousness of the crime, and whether or not within the purview of this factor deceased victim was armed. This is undue and inordinate attention to but one .factor of many. Nevertheless, these are facts which were known to the Sentencing Judge at time of sentencing, and these facts are really past history which will not change in nature or character in the future. Thus, it is singularly important for the Parole Board to review all of the other factors set forth in the statute in coming to its ultimate conclusion. It may not ignore them! If the “seriousness of the crime” factor was to have been of paramount importance to the relative exclusion of other factors, then the Legislature would have so provided.
*75 All in all, the court finds that the board has failed to satisfy the mandates of the above-quoted sections of the Executive Law. Accordingly, it is found that defendant was denied minimal due process of all which should result in a judgment directing the board to perform fully its statutory obligations (see Matter of Green v Smith, 52 AD2d 292, mot to dismiss opp den 40 NY2d 901; Matter of Watkins v Caldwell, 54 AD2d 42). The Parole Board must be thoroughly aware of the fact that the legislative requirement of written detailed statements serves as a helpful “guide to an inmate’s conduct while in prison and in his endeavor to return to society as a useful citizen.” (Matter of Cummings v Regan, 45 AD 2d 222, revd on grounds of mootness 36 NY2d 969; Matter of Watkins v Caldwell, supra, p 45.) It should be quite clear that the paucity of detailed reasons in its decision herein does not comply with the law or provide a basis for intelligent review, nor does it give any guidelines to the petitioner with respect to his future conduct as a prison inmate.
The court is mindful of the holding in Matter of Russo v New York State Bd. of Parole (50 NY2d 69). In that case, the Court of Appeals repeatedly referred to the enabling statute and even stated (p 75), “What the New York statute promises, simply put, is that guidelines shall be established and followed unless reasons are given for not following them.” Here, certainly, the guidelines were not followed and no reasons of any substance have been given for not following them (see, also, Executive Law, § 259-i, subd 6, and CPLR 7804, subd [e]).
The court is further mindful that it may not substitute its opinion with respect to the merits of this proceeding for that of respondents. It is clear that respondents are given the sole discretionary powers to review an inmate’s eligibility for release (Executive Law, § 259-i, subd 2, par [a]). Furthermore, subdivision 5 of section 259-i of the Executive Law precludes review “if done in accordance with law.” However, here, petitioner alleges noncompliance with the law. Therefore, the court must, and has the right to review these proceedings, not to substitute the court’s opinion or overturn respondents’ decision, but to *76 determine whether there has been compliance with the law by the board in making its decision. In short, this court must determine the regularity of the proceedings by which the board arrived at its decision (see Matter of Russo v New York State Bd. of Parole, supra, and Executive Law, § 259-i, subd 5).
Therefore, petitioner’s motion for a judgment pursuant to CPLR article 78 is granted in toto. The acts of respondents have been found to deny petitioner his right to due process of law. Petitioner, under the mandate of due process, has a right to expect that respondents will follow their enabling statutes when called upon to act within the promulgated guidelines required by the Executive Law. Petitioner’s request to proceed as a poor person is granted. The determination of the Parole Board of October 23,1979, as well as the March 19, 1980 affirmance thereof, is hereby vacated. Respondents are ordered to provide petitioner with an immediate new parole hearing which will conform in all respects with the provisions of the Executive Law.
As an obiter dictum, the court wishes to note that petitioner’s third cause of action refers to the fact that he had not been provided with the names of respondent board members who decided the administrative appeal in March, 1980. Section 259-i (subd 4, par [a]) of the Executive Law provides that “Any board member who participated in the decision from which the appeal is taken may not participate in the resolution of that appeal.” Respondents have adopted this legislative mandate in the promulgation of its own rules (see NYCRR 8006.4 [a]). With respect to this situation, the court approves of the following language of petitioner’s memorandum of law:
“this prohibition can only be meaningful if an inmate is provided access to a mechanism for determining whether the Parole Board complied with the law. * * * Without this information, petitioner has no way whatsoever to determine whether respondents have acted in accordance with the law. Although there is a presumption of regularity in the conduct of a public body’s activity pursuant to its statutory authority, this presumption should not be considered absolute.”
*77 This court does not agree with the holding in People ex rel. Lambertis v New York State Bd. of Parole (72 AD2d 694), as cited in respondents’ affidavit in opposition. In that case it was held (p 695) that there is “no warrant in either statute or case law for the direction * * * that respondent * * * Board of Parole reveal to petitioner * * * the name of that member who had reviewed the findings of the parole hearing officer”. It is beyond the bounds of logic that there can be such a prohibition in a case such as this one. Unless the names of the board members who heard the appeal, which are known only to the board, are revealed to petitioner, he could never make a valid determination that his appeal had been heard by others than those who had conducted his initial hearing. Thus, the legislative mandate would be completely thwarted. In any event, were it not for the fact that this court is directing the respondents to afford a new hearing, direction would otherwise be made to respondents to reveal the names of board members who heard the appeal as part of the court’s testing of the regularity of the proceedings.
Proceed accordingly, forthwith. Petitioner is to submit a judgment and order granting the relief requested on notice to the Attorney-General without delay.